Good morning, Your Honor. Gary Watt for Safeco Insurance. Your Honors, I hope to leave about three or four minutes for rebuttal, so I'll watch the warning lights. Your Honors, there was no coverage under the Safeco policies for this accident. Now, there were only three possible insurers who could have had coverage for this accident. A tree fell on a vacant lot. Now, the owner of the lot was the Daniel Pondella Family Trust. They owned the lot. Well, that wasn't raised below, correct? I mean, your argument below was that the Tanzana lot was not held for business purpose, and therefore there was no coverage. This was the business pursuits exclusion, Your Honor, was the argument that was raised below, meaning that that was a different argument now. Is that accurate? It's a different argument, but it's the same purpose the Court here has today. The parties asked the Court to interpret this document, this contract of insurance. And the answer this Court is going to give, sitting, reviewing at De Novo now, putting itself in the shoes of the trial court, is whether or not there is coverage here. So one thing I found interesting was the district court did not address this issue. The district court did not address the issue of initial coverage. That's correct, which I had the impression that Safeco in the district court must have suggested to the district court that there was coverage. Is that right? That's not correct. What happened? Well, what Safeco did in the district court was take the simple path, which was an even if path, which is even if there is initial coverage, which Safeco disputes, but even if there's coverage here, we turn next to the business pursuits exclusion. And then we look at the business pursuits exclusion. And in the district court, Safeco rested its argument there and, of course, later on the excess other insurance clause. Those were the two principal arguments that Safeco made there. But my position on appeal is that reviewing this contract at De Novo. Well, Travelers is not, in its brief, has not said you waived the argument. They haven't. In fact, they've met it head on. Correct. Correct, Your Honor. Go ahead. Thank you. So there are only three possible insureds here, Your Honors. That is the trust, Daniel Pondella, and Patricia Pondella. That's the three possible insureds. The problem for the trust is fatal. There is no coverage in this policy for the trust because the only way they get that coverage is through the additional interest endorsement limits coverage if a box is checked to the resident's premises and nowhere else. So for the family trust, there's no coverage under these policies before we even turn to whether there was a business pursuit. And there's no coverage because they're not a named insured that has personal liability coverage at this location. Well, so let me ask you this. So, you know, a trust only acts through individuals, correct? Correct. So, the trustees? The individual trustees are named. So, and they are in fact the trustees of the trust. That's correct. Why isn't there coverage, Dan? In essence, the court's recognizing what I'm about to say, which is there are two avenues that the Pondellas as individuals and named insureds could have had coverage under this policy. And that is acting as individuals with no relation to the trust or acting as trustees. Those are the two avenues in which the named insureds could have coverage. Can you really separate them that clearly? Well, I don't think you even need to separate them here. First, Your Honors, with respect to anything that they might have done as trustees, and we'll turn to Dan Pondella's declaration in a moment and see there's nothing. But with respect to any theoretical thing they might have done as trustees, since 1986, the probate code has required personal fault. And personal fault, as stated in the cases since that time, turns on issues such as self-dealing, fraud, misrepresentation. There's never been a whiff of any of those things in this case. This case is, if I might say, it's kind of an ordinary case. It's an ordinary tort. A landowner, a tree falls, a vacant lot. The facts are, as I understand it, he was, he got a notice from the city to trim the trees. And in the meantime, before that, the trees could be taken down, or a tree taken down, it fell and killed the victim. Is that right? Almost. Almost. In January of 2005, Dan Pondella received an abatement notice from the city of Los Angeles. He then hired a company, it's in his declaration, page 224, 225. He hired a company to trim the trees, and they trimmed the trees. And then, a little while later in March, somewhere about a month and a half, two months later, the tree fell anyway, or a tree fell anyway, and this accident occurred. So, he individually hired the tree cutters, the trimmers. Why isn't there, couldn't there be a claim, or why wasn't there a claim, or is there a claim, that he was negligent in who he hired? Well, if the trust owns the property, then the trust agents are receiving an abatement notice, he's the trustee, and he's hiring a company. So, he's acting as a trustee, and as a trustee, where's the personal fault which is necessary to make him subject to individual liability for his conduct as trustee? Well, I guess your argument is, there's no evidence that he engaged in He didn't, for example, hire his brother-in-law, or some clearly incompetent person to save money personally, or something like that. Or try to do it himself, and put the difference in his pocket, something to that effect. That still leaves the possibility, there's still one possibility here, that the Pondellas, as individuals, were somehow involved, as individuals, not acting as trustees, in the events leading to this accident. But that leads us to the declaration of Daniel Pondella. And that declaration, in particularly paragraph eight, is of interest. The Pondellas haven't owned the lot, as individuals, since 1991, 14 years earlier. And at the top of page 225, Dan Pondella testifies on behalf of himself and Patricia, no alterations were ever made on the lot, when Patricia and I owned the lot. And in addition, the landscape on the Tarzana lot was never altered or changed. All there was, was this occasional tree trimming. That's elsewhere in the declaration. So, what I would suggest, Your Honor, and then I'll turn to the business pursuits exclusion, is, without regard to the business pursuits exclusion, where's the, the potential for coverage when you, when you take the facts and look at the policy, and you look at this declaration, which is so conclusive, where is the potential for an individual action by the Pondellas that would expose them to liability and ultimately trigger coverage or require coverage? But you're not saying there wasn't, that SAFCO wasn't responsible for providing a defense? SAFCO provided a defense. The duty to provide a defense is different than California was. And you can, you can see that the, that the district judge was not in error in, in making you, your client pay pro rata part of... For, for defending. We can see that not only that, that, that although we in our cross motion, sort of after the fact wanted to get out of the duty to defend, back when SAFCO was tendered this claim, it was right to, to accept the defense because that's the time, your honors. That's the time when you have just the bald allegation. This trustee or this individual owned or did something at this lot and that's in the complaint. And of course they would pick up the defense then. But duty to defend and duty to indemnify is a fluid concept. And so when the parties move for summary judgment, it's based on the state of knowledge at that time. So no, your honor, the district court is right about the duty to defend. This issue is about the duty to indemnify. And, and... Well, why, getting to the business pursuit argument, I mean, isn't your argument inconsistent there? I mean, you say this was a business pursuit. Well, you, it's always going to be an appearance of inconsistency, but a carrier has to err on the safe side, right? Take the duty to defend under a reservation of rights, let the case develop, and then see what... Isn't the evidence clear that they, they, they simply bought this for an investment? I mean, they never rented it. They never approved it. As you just said, all they ever did with it was trim the trees on it. And now they say it's valueless because it's so small. And there's no evidence to the contrary. How is that a business pursuit? Your honor, it's a business pursuit because this is their spec lot. I call this the spec lot. This is a lot that they bought for the purpose of some unknown scheme to hopefully build something, have it appreciate. This was their general investment. And the answer is, your honor, that all, that's all that's required for it to be a business pursuit. Because under the California case law, the courts say that what you look for is any kind of profit motive. Not that there be an ongoing concern, not that there be some, like a restaurant operating there or something more tangible. But, but because this is, these things are so varied in concept and varied in dimension, you look to the profit motive. And you also look to the California tax code. Any activity with the object of gain, benefit, advantage, direct, indirect, part time, or occasional. Now, this was their spec investment. And your honor, the reason nothing happened there, because they made a bad investment. They made a bad investment. They didn't do their due diligence, and they ended up with a lot that they couldn't build something on and make some money out of. Well, so your position is, any time that a person buys an asset of any type, stock, land, whatever, with the hope that they may be able to hold it and sell it later, that's a business under this provision of the contract, the insurance contract. Well, it's a business pursuit under the, actually it's a claim for bodily injury arising out of, very important language, arising out of a business pursuit of the insurers. And away from the policy in the context of the California courts, these are business pursuits. They're not businesses. We say business, we think it's a restaurant. We think it's a garage, some kind of shop, people, cash registers. It's an investment, and therefore, it's a business pursuit. Well, I mean, it might be one thing if they were buying and selling lots, or they bought ten lots in the area, or something like that. But there's no evidence of that. But the problem, there's a problem with that. There's an initial appeal. I'll submit, your honor, and I may be wrong, and you may believe I'm wrong. But there's an initial appeal to saying there's this quantity aspect. It was just one time. It was just one lot. But let's change it. The court usually asks the hypothetical. Let me posit one. Let's suppose they bought 1,000 acres. They didn't know what they were going to do. Maybe someday the city would come there and it would increase in value. Maybe they'd build a resort. They don't know. They bought 1,000 acres as a general investment. They didn't tell their homeowner's insurance carrier about this purchase. By the way, the guy is a broker in the insurance industry, Dan Pondella. But they didn't tell their homeowner's insurance about the 1,000 acre general investment that they're not sure what they're going to do with. And a child goes out there and falls down an abandoned mineshaft and is injured. There's the issue of bargain for exchange. And the courts in California say that the business pursuits exclusion, it's not a trick, it's not a ruse, it's not something to fool the insured. The business pursuits exclusion is about insuring the non-business or personal activities of the insured. And by having a business pursuits exclusion, avoiding the windfall that would otherwise occur when the insureds do not disclose these types of ownerships and these types of interests, and pay the much lower premiums attending. In this case, a $37 premium. So if you were an individual insured homeowner, not an insurance broker, the reasonable such person would believe that owning a vacant lot somewhere that you hoped you could sell maybe for your retirement in 20, 30 years, that that was a business pursuit? At the very minimum, as a insured owning a vacant lot that's going to sit for a long time, I'm held to be aware that there may be potential torts there. And I may just have an obligation to inquire of my carrier, let them know. And notice that Dan Pondella knew to let travelers know, hey, add this location to the CGL policy. Make sure this is a covered location. No windfall there, bargain for coverage. No bargain for coverage here in this instance, Your Honor. If you want to save the balance of your time for rebuttal. I sure will. Thank you, Your Honors. Thank you. Good morning. May it please the Court. Richard Weston for Travelers. I would like to address several issues. The first issue is the issue of the trust. I think that the fundamental problem with what Safeco is arguing, is that they are arguing essentially that this family trust, which is essentially a testamentary revocable trust, is something akin to a corporation. That it shields them from liability. That it's a separate entity that has separate liabilities. That's simply not the case under California law. And I'd ask the Court, and this case is cited in our brief, but not this portion of it. A case called Zanella v. McGrath, which is 166 Calab Four 615 at 633 to 634. And I'll quote, open quote, under California law, a revocable inter vivos trust is recognized as simply a probate avoidance device. Close quote, ellipses. Property transferred to or held in a revocable inter vivos trust is nonetheless deemed the property of the settler. Here that would be the Pondellas. And is reachable by creditors of the settler. And then there's some citations I'm omitting. These sections recognize that when property is held in this type of trust, the settler and lifetime beneficiary has the equivalent of full ownership of the property. So the purpose of this trust is simply to keep the property out of probate in the event the trustor, the settler, here the Pondellas, were to die. It doesn't change the ownership during their lifetime of the property. Now, counsel- I'm not sure I follow you. What do you mean it doesn't change the quality of their ownership? No, it doesn't change the fact that they still own the property during their lifetimes- As trustees. As trustees, no, in their own name. It says the individuals under the Zanella case, and also under Walgren versus Dolan, which is cited in Zanella, it's 226 Cal F 3rd 572, 578. They have the equivalent of full ownership. Now, under the- That's different. You said equivalent. Well, I did say equivalent. That's different. It isn't different if you're looking at- Well, you know, it is probably, you have to have a revocable interest. If it's only a revocable trust, you know, they can revoke the trust instrument. Yes, they can revoke- And then it would go back to them as the settlers. They were the owners. Well, I don't think that's the way it's held, Your Honor. I think under the code, it is held in trust for them by the trust until such time that they die, at which point the trust takes ownership and then it passes to the beneficiaries. I think that's how it works under the probate code. But I think- I'm not going to claim, you know, that I have a detailed knowledge of the- It's Turkey. It seems like the probate code, but there's no claim here that this wasn't a legitimate trust, correct? No, there's no claim it's not a legitimate trust. A legitimate, properly formed family trust, as you've said. Yes, Your Honor. And what this policy provides, both policies, specifically provide that vacant land is covered if it is owned by the insurers. But don't the policies themselves add them, I mean, as trustees, but only as to additional interest? No, they don't. The homeowner's policy, if you actually review the endorsement, the additional interest endorsement to the homeowner's policy, the only entity listed on that additional endorsement is a bank. They are not listed on there. So there is no limitation in that additional interest endorsement on the homeowner's policy, limiting any sort of coverage to them in their capacity as trustees. The only mention of that is on a page of the declarations. They identify three additional interests, one of whom is the trust, and two of whom are banks, presumably mortgage lenders. Then they have a separate additional interest endorsement, which counsels represented on the homeowner's policy somehow limits the coverage available to the trust. But that endorsement, if it's actually reviewed, does not list the trust. It only lists one of the banks. So I don't think that is a valid point on the homeowner's policy. On the other policy, they are both listed on there. You mean the condo policy? Yes, the condo policy. Now, what I think is really important here with respect to these issues is that my point is that the Pondellas bought a policy that covered vacant land. There are tens of thousands, if not millions. Where's the provision in the policy that actually says that it covers vacant land? It defines, if I could grab it. Is it under liability coverages? I'm looking at the, I think I have the condo policy. It's under the insured, the definition of insured premises under both policies. Insured premises. Yes, the definition sections. It includes residence premises. It includes vacant land and some other things. Insured premises. The A-65, Your Honor, and the condo policy and the 935 policy, the insured location includes vacant land. Okay, well. So there's no dispute that it includes vacant land. There's also no dispute that many, many families hold property in family trusts as a probate vehicle. So essentially what SAFCO would ask the court to do is to say if they happen to hold it in a family trust, it's not going to be covered. Notwithstanding the fact that under California law, the purpose of the trust is simply as a probate vehicle. The other issue, I think, on this personal liability issue of whether Mr. Pondella could be held liable for this matter in his personal capacity. First, he was sued in his personal capacity. He was also sued as a trustee, but he was also sued in his personal capacity. Second, this trust did not have employees like a corporation would. Everything that was done here, or failed to be done, was done by Mr. Pondella. They didn't have anyone else working for them. Now, counsel seems to suggest that if Mr. Pondella doesn't own the property, somehow he can't be liable for the loss, and that's just not the case. There's nothing in the negligence law that precludes someone from being liable on a premises liability claim if they were negligent simply because they don't own the property. Anyone involved in its maintenance, anyone who had a duty to maintain it, anyone who undertook anything to maintain it, if they did something or failed to do something that could cause foreseeable harm, could be liable in negligence. They don't have to own the property. So I dispute that the trust owns the property. I believe Mr. Pondella owns it. It was held in trust by the trust. But even if you were to accept that, he could still be held liable in his personal capacity. Counsel also indicates that, well, he didn't do anything, so how could he be held liable? Well, clearly under the law, under negligence law, one can be held liable for failure to act. Did he go out and did he check the premises to see if the trees were trimmed properly? Did he check to see if all the trees were trimmed? Did he do anything with the premises? The answer is no. Could a jury have found him liable? Yes. It would have been the same type of liability that he would have had in his capacity as a trustee because he did the same things in that capacity or didn't do the same things. So the point here is that we do not accept the premise that Mr. Pondella was not an owner. And if he was an owner, because they can't hide behind the family trust. Family trust doesn't even shield the Pondellas from liability, let alone shield Safeco from liability. But even if you accept that premise, he still could be liable in his own capacity because he's the one that did everything. Now, counsel makes much of his, what he calls, amendments to the probate code in the 90s. But all they demonstrate in his reply brief is that someone can't be held liable as a trustee simply because they're a trustee. He's not being sued individually because he failed to do something or did something wrong as an individual. But his only duty to act in this situation was as a trustee. I mean, he is the trustee and he acts when he acts in relation to that property as the trustee. He's not an employee, he's not an employee of the trust, he is the trustee. Well, in terms of the liability issue for him, the fact that he acted at all, they were not seeking to hold him liable. What counsel's arguments in the response brief are that these amendments suggest that he couldn't be held liable because he was a trustee, personally. That's not what they suggest. If you read his own brief, what is stated in there very clearly is that the trustee won't be held liable for something merely because he has a capacity as a trustee. If he does things or fails to do things, he can still be held liable. Now, we're getting back to if we're going to allow them to hide behind this trust, this trust does not shield them from personal liability. That is clear under the law. Cases we've cited, and it doesn't even shield their assets as long as they're alive. But they have to act in a certain way. I mean, isn't that correct? Isn't that what the cases say? Sure, they would have to have done something or failed to do something they were supposed to do. They would have to have been negligent. Simple negligence? Sure. In other words, a trustee, you believe the law to be that a trustee, you know, no question the person is a trustee. He's not a fraud or anything like that. And if that person acts negligently, that that person is liable personally, his own personal assets are liable. Yeah, if they're, if they're, no, the trust assets are liable. Yes, and their own personal assets. Yes, their own personal assets. I'll correct myself. Stanley, correct it. Let's take a situation where I think this could come up. Let's say instead of the Pondella Trust, this is the Bill Gates Trust. Okay? And he puts all his money into his trust, and it's billions of dollars. Okay? And he owns properties. But probably Bill's not going to get on the phone and call somebody and ask them to go out there and hire the wrong guy and not follow up on it himself. Okay? He probably had, the trust probably has employees that would do that for him simply because of the extent of his wealth. So in that case, he wouldn't be held liable simply because in his capacity, because of his capacity as the trustee. He wouldn't have done anything. His employees who ran that trust would have done something. So under the probate code revision cited in counsel's brief, that's where they would come into play. But here, the only person there was to do anything was Mr. Pondella. He didn't have employees. He didn't have anyone running this. He's the one that made a decision to call people or not to go out there and check. He was sued individually and as a trustee. That was clear from the underlying complaint. I'd like to, if the Court has no more questions on that, move on to the business pursuits issue. I think that when one looks at the issue of whether there's coverage under the Safeco policy, we really, and whether the Court's determinations ultimately about the sharing were correct, we have to look at it in two separate ways. The Safeco policy coverage under that has to be completely divorced from the existence of the Travers policy. Counsel argues in his opening brief that trying to make the arguments that there is no coverage under the Safeco policy, referring a lot to the Travers policy, but forget that. It doesn't matter. The first question is, is there coverage under the Safeco policy? And I would submit that if you take the Travers policy out of this and you have an insurance policy issued to a family that covers vacant land, they buy some vacant land in 1978, 27 years before the accident. They never do anything with it. And a tree falls on someone. Would this Court say there's no coverage for that? Would this Court say there's no coverage for that because you used a probate device in connection with your estate planning? I don't think so. So was there a business pursuit? In Safeco's arguments trying to state that Mr. Pondell didn't do anything, we constantly hear a drumbeat, if he didn't do anything, they didn't do anything. They couldn't be held liable. However, when we're talking about the business pursuit, we supposedly have some big business plan here to turn this into all this money and do everything. Simply not consistent with the evidence. Isn't opposing counsel's argument that his construction of the law is that any time you hold an asset for investment that that's a business pursuit? And that will exactly wipe out the exception to the business pursuits exclusion. Wipe it out. Well, why? Why? Well, it wipes it out because under his view of the business pursuits exclusion, you look at context. And I agree with that. You do have to look at context to interpret this exclusion. But the context Safeco sets up for the court is that if it has any relationship whatsoever, no matter how attenuated to a profit motive, if a guy bought a piece of property in 1978, abandoned it, and admittedly, in Safeco's own brief, did nothing to it for 27 years before an accident, that's still a business pursuit. It's still excluded, even though they insure vacant land. And this was vacant land. Now, my view of the context would be that the cases suggest that, well, let me back up. Well, I mean, here's an argument, I guess, that if you bought a piece of property and you hoped that you could sell it in some years and make some money, but in the meantime, you used it for vacations, you used it personally, you hunted or fished on it or something like that, obviously, your primary purpose is to enjoy the asset during your lifetime, just like you live in your residence. But this lot, there's no other use of it. They're not camping on it. They're not renting it out. I mean, they're not living on it. They're not doing anything personally on it. The only reason they own it is to make a profit at some indefinite point in the future. And his argument is that's a business pursuit. Well, and you know what? I think someone could certainly make that argument reasonably perhaps on day one when they buy it. This is 27 years later. Nothing's happened. He's testified he abandoned any business pursuits. It's like if I had a store in 1978 and I'm going to open this store and I'm real excited about opening the store and then, you know, the next week the computers come out and my typewriter store is no good anymore, I'm not going to open it. I'm going to abandon it. I'm going to forget about it. That doesn't mean in 2005 it's still a business pursuit. You have to look at these in the context of what we're dealing with. And what we're dealing with here is a family who bought a policy. It covered vacant land. They bought some vacant land. They thought they'd make some money off it. They didn't. They abandoned it. They did nothing for 27 years and a tree falls on someone.  so perhaps I can reserve a minute. Counsel argues throughout his brief that the business pursuits exclusion should be broadly construed. That is not the law. The law is that exclusions are narrowly construed, and that's under the Partridge case, which is a seminal Supreme Court decision, 10 Cal 3rd 94, 101 to 102. But what is broadly construed are exceptions to exclusions, like this one, something ordinarily incident to a non-business pursuit. That is broadly construed, and that's under Iden, 18 Cal 4th, 1192. Now, in the context of this case, counsel has cited a few cases which he asserts support his position. The Smythe case, he says that supports his position, except the claim there the business pursuits exception was not applied. The man was sitting on the board of directors, said he was doing it as a favor to someone. The court said, no, you don't sit on a board of directors as a favor to someone. Clearly, sitting on a board of directors is not ordinarily incident to a business pursuit. Maintaining a lot for safety when you're ordered to do so by a governmental agency certainly may be. Now, the West American case involved an employer who liked to have his employees come to his home on Friday, collect their checks, have a few drinks, et cetera. They tried to argue it was a non-business pursuit. I mean, it wasn't ordinarily incident. I'm sorry, the exception applied. The court said, no, the man's purpose was to forward and grow his business. Certainly, we don't have anything like that here. We have a business that was completely abandoned. There was no business motivation in trimming those trees or doing anything with that lot. The motivation was to comply with an order they got from the government. The last case is the Jimenez case, which counsel, I believe, did take some quotes out of context there in saying that one of Jimenez's motivations was that the value of the property would increase. So that's exactly like this case. But what is not mentioned in the brief is that Jimenez, the insurer, was actually running an ongoing produce business at this premises and that he was also renting a part of it to another business. So he's taking down a lean tree structure to make sure those businesses can function and to enhance the value of the property. Nothing like that is going on here. Obviously, no business was being conducted. It wasn't being rented out to anyone. I think the context argument should be stated this way. Whether the activity out of which the accident arose was contextually related to the activity that the carrier claims triggers the exclusion. Here, the accident arose out of a tree falling. It had nothing to do with a business activity. Thank you, Your Honor. Thank you very much. Appreciate your argument. We have a few minutes for rebuttal, if I remember. Is there any time left for rebuttal? Yes, Your Honor. Could I just ask you one question about the negligence? Absolutely. So if you go back to the complaint that the decedent's family filed against the Pondellas, basically it charges them in their individual capacity and as trustees, and then it charges them with negligently and carelessly supervised, managed, maintained, controlled, conducted, operated, cleaned, designed the property in such a way that they allowed the trees involved in the subject accident to lean at a substantial angle over Reseda Boulevard, such that there had been an accident waiting to happen for a substantial period of time. Yet defendant failed to protect against or otherwise take any action to prevent the type of accident such as the accident that resulted in decedent's death. Why aren't they just simply outright alleging his individual negligence? Well, the case was settled. Now we're going back in time to the time when Safeco received this complaint. Well, the case was settled, so we don't really know. But the duty to defend and the duty to indemnify are fluid. The case was settled. Prior to the case being settled, these were the allegations, and a lot of the facts were unknown.     Well, the case was settled. A year after that, there are cross motions for summary judgment after deposition. Well, I guess what I'm concerned about is the probate code, your probate code argument. Well, I guess that's what I'm saying, is that now we're at a place where we have the declaration and we know that the argument that your Honor is suggesting fails now because it's the actions of the trustee. And the actions of the trustee do not give rise to tort liability absent a showing of personal fault. That's the law. That's the probate code. And it has nothing to do with the form of owning or creating a family trust. It's about the torts of the trust or the trustees. And the legislature did this for a valid, a good reason. They didn't want those who were going to act as trustees to be exposing, which was the prior rule, including derivative liability for torts of the agents. They didn't want those acting as trustees to be exposed to exactly the kind of liability that you just described in your question. They seem to pick up negligence. I mean, you can only be liable for negligence for your person. Well, not only, but here they're required to maintain and supervise. But with respect to the trust owns the property. The trust is not uninsured. And then the point we're dealing with here is how are the Pondellas as individuals going to be liable? And the answer is with respect to any conduct as the trustee, there is no whiff of liability, and therefore there's no possibility of liability and no coverage once we know what we know via Daniel Pondella's declaration. There's the possibility of coverage for their conduct. We haven't heard of any. The possibility as individuals, maybe they did something not as trustees, there's that possibility. But the problem with that is it runs head on into the business pursuits exclusion. And with the little bit of time that I have left, counsel said, your honors, let's go back to 78, and if this all happens in 78, maybe you've got a business pursuits exclusion. This provision says arising out of business pursuits. And this Court, the Ninth Circuit, has said in Continental Casualty and Underwriters of Lloyd's of London, arising from means, arising out of means, originating from, having its origin in, growing out of, flowing from, or a slight connection between the occurrence and the excluded activity, in this case the general investment. And, your honors, I'll leave with the district court statement. There was no other activity. There was nothing ordinarily incident to non-business pursuits. There was only this investment that went sour. Thank you. Can I ask a question before you leave? Let's get Fregerson on the phone. Go ahead. Yes, your honor, please. Where was the tree located on the lot? What we know, your honor, about the tree is that it was leaning, it was on the lot, and it was leaning out over the sidewalk and the street. Well, let me ask, where was it located? Was there a parkway? Was there a front lawn? Your honor, it was a vacant lot, I may not be understanding your question correctly, that was leaning over Reseda Boulevard. Okay. Well, how far from the curb of Reseda Boulevard was the truck? Your honor, I have no information other than that the tree was the property of the trust and was on the vacant lot. I see. Have you ever checked to find out if the tree was on public property? Well, your honor, I came into this case very late in the game as appellate counsel, and no, I haven't checked. Your honor, I don't know what kind of tree it was either. I don't know how big or small it was. I do know that it killed Sheldon Miller when it fell over, and the record, Daniel Pondella's declaration, states that he received an abatement notice from the State Department that said the tree was on public property. And he took action and had the trees trimmed, and then the tree fell over. Yeah, but he wasn't going to tell me where the tree was. Was the plaintiff there trespassing when he was on the property? No, your honor, if you're referring to the decedent in the wrongful death action, your honor, he was driving by, and the tree unfortunately fell on him and killed him while he was driving his car. Well, how big was this tree? Unfortunately, I don't know, but it was big enough and long enough and tall enough to kill him. All right. And it's strange. It's one of the first things I was looking for was this picture of the tree. Where was it? Well, I think, your honor, that the fact that this case got settled and then became a different litigation for contribution may be the reason that some of these questions were never answered. Okay. By the way, was there ever an effort to settle the dispute among these two insurance companies? I'm sorry. I didn't catch you there. Was there ever an attempt to settle or to negotiate? We did. In fact, we did a Ninth Circuit mediation in this case. And it wasn't helpful? It was helpful, but it just didn't resolve the issues. And actually, we've been involved in settlement negotiations leading up to this argument today. And it didn't settle. I'm always surprised when you see two insurance companies. The insurer is not involved in any way. That's right. This is just trying to – It's only money. It's the clash of the titans. Right. You're just trying to balance out the money. And, you know, in another case, you might be in their shoes. You know, it's just – I'm surprised you guys don't have a little scheme or a little system for resolving these disputes within the industry. Well, maybe within the industry more is needed. I can say that the lawyers in this room have worked very hard at settling this matter. All right. Well, we thank you, and we appreciate your arguments in the books. And the matter is submitted at this time. Thank you. Thank you. All rise for the discussion center.
judges: Jones, Pregerson, Paez